## E. A. Fabian and John Schoen v. John E. Traeger, Coroner, etc.

### Gen. No. 11,596.

1. FRAUD—*how, may be proved.* Fraud is not presumed, but may be proved by circumstantial evidence.

2. FRAUD—*latitude allowed when charge of, to defraud creditors is made.* Where such an issue is involved in a case, wide latitude should be allowed in the admission of testimony.

3. SET ASIDE—*when purchase of entire stock by one creditor may be, at the instance of another.* When a purchase by one creditor of the entire stock in trade of a common debtor is attacked by other creditors upon the ground of fraud, and, on the whole evidence, it does not appear that the purchase was made in good faith and for an adequate consideration, it will be set aside.

4. SALE—*when, will be upheld.* If, however, such a sale as that referred to in the preceding paragraph is made to one creditor upon a sufficient consideration and without intent to defraud, hinder or delay

Fabian v. Traeger.

other creditors of the vendor, the same will be upheld although the result may be to prefer the purchasing creditor to the exclusion of all other creditors.

5. SALE—*effect of fraudulent taint upon.*  A purchase which is colorable and fraudulent in part, is, as to other creditors of the seller, void as to the whole of the property conveyed.

6. SALE—*what evidence competent where, is attacked as fraudulent.* Everything that was said by the parties to a sale attacked as fraudulent, at the time or about the time of the consummation thereof, is competent.

7. VERDICT—*when, not disturbed.*  The verdict of a jury will not be disturbed upon appeal where it is so far supported by the evidence that it cannot be said to be the result of passion or prejudice.

8. EXCEPTION—*essential to raise question of competency of evidence.* In order to raise the question as to the propriety of a ruling of the court in admitting evidence, it is essential that an exception should have been preserved to such ruling.

9. BURDEN OF PROOF—*to establish title to property replevied, in action upon replevin bond.*  In an action upon a replevin bond, the burden of proof is upon the defendant (plaintiff in the replevin suit) to establish his title to the property in question.

Action upon replevin bond.    Appeal from the Circuit Court of Cook County; the Hon. RICHARD W. CLIFFORD, Judge, presiding.   Heard in this court at the October term, 1903.    Affirmed.    Opinion filed November 28, 1904.

**Statement by the Court.**    On and prior to November 20, 1897, the Greenwald Furniture Company carried on business at No. 4611 Wentworth avenue in the city of Chicago. It also occupied one floor of No. 247 Forty-sixth street, situated in the rear of its store, as a wareroom.    Appellant Fabian was a creditor of the company.   It is alleged that on that day Fabian purchased and took possession of all the stock in trade of the company at the premises named for the sum of $2,505.40; the consideration being made up of notes of the company held by him, of moneys loaned by him to it, of an open account due from it to the Hafner Furniture Company aggregating the sum of $314.26, and of $56 in cash paid by him to Joseph Greenwald, the secretary and manager of the company.    Said date fell on Saturday.    The Monday following the Reading Stove Works (Orr, Painter & Co.), also a creditor of the Green-

wald Furniture Company, caused an attachment to be levied, in its suit against that company, upon the stock in trade so purchased by Fabian. Afterwards the issues in attachment were found in favor of the plaintiff and judgment was entered for $1,071.07. November 23, 1897, Fabian replevied the same goods from the sheriff, giving a bond to the coroner. This suit was dismissed without trial. The present action was then brought upon the replevin bond for the use of The Reading Stove Works. Appellants pleaded that said goods were the property of Fabian. Upon trial the jury found for appellee, assessing the damages at $1,467.81. From the judgment entered upon that finding the present appeal was perfected.

B. M. SHAFFNER, for appellants.

W. P. BLACK and A. L. WINTERS, for appellee.

MR. PRESIDING JUSTICE BALL delivered the opinion of the court.

The first contention of appellants is that the verdict is contrary to the evidence.

Fraud will not be presumed, but must be proved. That proof may be either direct or circumstantial. Agreements to perpetrate frauds are not made in the open; they are consummated in secret meetings. Hence it may happen that the fraud alleged cannot be shown by direct evidence of the fact necessary to be established by the plaintiff in order to sustain his cause of action, and yet it can be shown by proof of other facts and circumstances from which the jury might rightfully infer the existence of the fraud charged. The law makes no distinction between direct evidence of a fact and evidence of circumstances from which the existence of that fact rationally may be inferred. A verdict may well be founded on circumstances alone; indeed, they may so group themselves as to become more satisfactory than direct evidence would be. Carlton v. People, 150 Ill. 187. When a purchase by one creditor of the entire stock in trade of a common debtor is attacked

by another creditor upon the ground of fraud, and, on the whole evidence, it does not appear that the purchase was made in good faith and for an adequate consideration, it will be set aside. On the other hand, if the sale is made to one creditor upon a sufficient consideration and without intent to defraud, hinder or delay the other creditors of the vendee, the sale will be upheld, although the result may be to prefer the purchasing creditor to the exclusion of all other creditors of the vendee. A purchase which is colorable and fraudulent in part, is, as to other creditors of the seller, void as to the whole of the property conveyed. Whether or not such a purchase is fraudulent is a pure question of fact, to be determined in the first instance by the jury. These propositions are elementary, and do not call for the citation of authorities to support them.

The following, among other facts, appear in the record : Appellant Fabian had never been in the retail furniture business, but for years had sold furniture for the manufacturers to the retail dealers. The Greenwald Furniture Company was run by Joseph Greenwald, its secretary and manager. Katie Greenwald was the president of this company, and the wife of Morris Greenwald. In November, 1897, the firm of Greenwald & Blum ran a furniture store at No. 4733 Ashland avenue, in Chicago. The Greenwald of this firm was the brother of Joseph Greenwald, of the Greenwald Furniture Company, and the husband of Katie Greenwald, above referred to. Edward or Edmund Hertzel, hereinafter named, was related by marriage to Joseph and Morris Greenwald.

November 20, 1897, Fabian spent the day in, or in going between the two stores, the one on Wentworth avenue and the other on Ashland avenue; and in that time, he says, he bought and paid for both stores; the consideration for the one being $2,505.40, and for the other " about $3,500." When asked if the purchase of these two stocks had " anything to do with each other," Fabian answered, " I think not." About sundown of Sunday, November 21, 1897, Fabian began to move, and did move a large number

of stoves from the basement of the Wentworth avenue store
to the warehouse of the Hafner Furniture Company, situ-
ate at 2620 Dearborn street.   When first asked as to this
occurrence, Fabian declared that the removal was not made
the Sunday following the purchase, but was made one week
later.   When contradicted as to this date by three disin-
terested witnesses, he admitted that he might be mistaken.
He also testified that he moved them out because of the
wet condition of the basement caused by recent rains.   It
appeared from the United States Weather Bureau reports
that the, only rain shortly before November 22, 1897, was
on the 16th day of that month, when but eight one-hun-
dredths of an inch of water fell.

Fabian testified that he paid $2,505.40 for the stock in
trade of the Greenwald Furniture Company, and that this
sum was its fair market value.   Three days later, in his
affidavit for replevin, he fixed the worth of this property
at $1,700 only.   In that interval he had sold $300 worth of
goods, thus leaving $2,200 in value still on hand.   He ex-
plains this difference of $500 by saying that the sheriff did
not levy on the goods (namely, mattresses, springs and iron
beds) stored in No. 247 Forty-sixth street, and that there-
fore those goods were not included in the affidavit for re-
plevin.   The original inventory upon which he based his
purchase shows 75 iron beds, 66 springs, 41 mattresses and
13 parlor suits.   The description of the goods in the affi-
davit in replevin shows, among other items, 72 iron beds,
60 springs, 40 mattresses and 12 parlor suits.   Further, it
was admitted by counsel on trial " that the property re-
plevied is the same property levied on in the attachment
suit."   Fabian said the sheriff came over there November
22 and levied upon everything in these premises, leaving
a custodian in charge.

Brode B. Davis testified that November 20, 1897, in
behalf of The Reading Stove Works, at about 5 P. M., he
went to the Ashland avenue store and there saw Fabian,
who told witness he, Fabian, had bought the two stores
for $7,000 in currency; that he had this money with him,

Fabian v. Traeger.

and was accustomed to carry large amounts of currency on his person; that he started to take an inventory, but had not completed it; that he took Morris Greenwald's word for what there was in the store; that Morris Greenwald had come to him the day before and asked him to buy, and that this was the beginning of the negotiations. This interview is admitted by Fabian, but he denies that what is above stated was then and there said. Where the truth lay as between these witnesses was a question of fact for the jury, who saw and heard each of them.

. Not finding the retail furniture business to his liking, Fabian, in the latter part of December, 1897, sold the then remaining stock of the Greenwald Furniture Company to Hertzel, a man shown to be of no financial means, for " something like $1,200." " We took an inventory," Fabian says, " and he paid me in checks; I put the checks through my bank and they were paid." Samuel H. Harris, the employer of Hertzel, testified that he drew his check to the order of Hertzel, for which Hertzel was to bring him the money. Instead of so doing, Hertzel brought him the uncertified check of Fabian, whom Harris did not know, for a like amount. Thereupon Harris stopped the payment of his check. Thereafter, by an arrangement made through Hertzel, Harris, Fabian and Hertzel met at a bank, and there Fabian had his own check, for the amount of the Harris check, certified, and gave it to Harris, and then the latter suffered his check given to Hertzel to be paid. This evidence tends to show a gratuitous transfer of these goods to a relative of Joseph Greenwald. Although Fabian was afterwards called to the stand he made no explanation of this exchange of checks. The rule is, " Where fraud is alleged and proof is offered to raise an inference thereof, the fact that no explanation of the transaction is offered by the party in charge is an additional circumstance to be considered, and from which inferences may be drawn." Schumacher v. Bell, 164 Ill. 181.

The verdict of the jury is so far supported by the evidence that we cannot say that it is the result of passion or of prejudice; and therefore we have no right to set it aside.

The next contention of appellants is that irrelevant and improper evidence, to their prejudice, was admitted over their objections.

The claim of appellee is that the transfer from the Greenwald Furniture Company to Fabian was made with the intent to delay and to defraud the creditors of the company. Upon that issue a wide latitude is allowed in the admission of testimony. An honest man is not injured by the application of this rule. "Evidence ought not to be adjudged irrelevant which, according to ordinary experience and common observation of the motives and conduct of men, may fairly be supposed to influence and persuade candid and intelligent minds. If the parties offer themselves as witnesses and testify to the good faith of the transaction, great latitude should be allowed in their cross-examination, and it has been held error to refuse to admit questions having reasonable tendency to throw light on the transaction, though the inquiry is as to matters not touched on in the direct examination." 14 Am. and Eng. Ency., 2d ed., p. 493, and cases cited in notes 2 and 3.

Everything that Fabian did on that Saturday concerning the purchase of this stock and the stock of Greenwald & Blum was admissible. This evidence bore directly upon his financial ability, and was therefore competent.

Appellee called A. L. Winters to impeach the witness Morris L. Greenwald. The record shows that a proper foundation for impeachment had been laid. Hence the evidence of Winters was proper and competent. Further, no objection or exception to the testimony of Winters appears in the abstract. Hence its admission cannot be urged as error upon this appeal.

The final contention of appellants is that the court erred in giving the following instruction to the jury at the request of appellee:

"The court instructs the jury that the burden of proof is upon the defendants to show title in the defendant E. A. Fabian, to the property replevied. The court further instructs the jury that if you believe from the evidence that

the evidence bearing upon said Fabian's title to said goods is evenly balanced, or that it preponderates in favor of the plaintiff, then the court instructs the jury that you should find for the plaintiff."

Under the pleadings in this case the burden of proof was on Fabian to establish, if he could, his title to the goods in question. Stevison v. Earnest, 80 Ill. 513. The fact that the instruction does not in express words point out the time at which Fabian should show title to the property replevied, does not render it objectionable. The jury were neither misled nor confused by this omission.

Believing that substantial justice has been done in this case, and that the record contains no reversible error, we affirm the judgment of the Circuit Court.

*Affirmed.*